# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CLIFTON CALDWELL,<br><br>Plaintiff,<br><br>v.<br><br>MASSACHUSETTS STATE POLICE OFFICERS TODD CAMBRA, NATALE LAPRIORE, LORI TRIPP, and UNKNOWN MASSACHUSETTS STATE POLICE OFFICERS, BROCKTON POLICE OFFICERS JENNIFER HAYES, EMANUEL GOMES, and UNKNOWN BROCKTON POLICE OFFICERS, the CITY OF BROCKTON, MASSACHUSETTS, ASSISTANT PLYMOUTH COUNTY DISTRICT ATTORNEY FRANK MIDDLETON, NORA BUCKLEY, and ROBIN ANAPOL<br><br>Defendants. | ) | **Jury Trial Demanded** |

**COMPLAINT FOR WRONGFUL CONVICTION**

Plaintiff, CLIFTON CALDWELL, by his attorneys LOEVY & LOEVY, complains of MASSACHUSETTS STATE POLICE OFFICERS TODD CAMBRA, NATALE LAPRIORE, LORI TRIPP, UNKNOWN MASSACHUSETTS STATE POLICE OFFICERS, BROCKTON POLICE OFFICERS JENNIFER HAYES, EMANUEL GOMES, UNKNOWN BROCKTON POLICE OFFICERS, CITY OF BROCKTON, MASSACHUSETTS, ASSISTANT PLYMOUTH COUNTY DISTRICT ATTORNEY FRANK MIDDLETON, NORA BUCKLEY, and ROBIN ANAPOL, as follows:

## Introduction

1. Plaintiff Clifton Caldwell was wrongfully convicted of aggravated rape. He is totally innocent of all this crime.

2. In October 1999, Plaintiff's 12-year-old niece claimed that her father, Plaintiff's brother, had raped her eight years earlier in or about 1991 (when she was four-years-old and her parents were going through a divorce) and that Plaintiff and his other brother assisted in the assault.

3. Despite the claimed brutal assault, there was no physical evidence of trauma in 1991 or any time after.

4. The girl claimed that she could identify Plaintiff at the purported assault not by sight but by his laugh.

5. Plaintiff's two brothers were acquitted of all charges related to the girl's claim.

6. Plaintiff, however, was convicted. The only difference in the evidence against Plaintiff from his brothers was that police fabricated a purported jailhouse confession against him.

7. The "confession" was procured well after Plaintiff was imprisoned together with the "informant."

8. That jailhouse "informant" had also provided purported "confessions" on prior cases, including a rape case.

9. The "informant" had previously worked with Massachusetts State Police (MSP) officer Todd Cambra, who had used the "informant" to obtain purported incriminating statements.

10. Cambra, among other officers, hid the details related to the prior relationship between the "informant" and police.

11. Plaintiff's wrongful conviction was overturned by the Supreme Judicial Court and all charges were dropped against Plaintiff by the Commonwealth on January 11, 2023.

12. Plaintiff had served over 18 years in prison for a crime he did not commit. He spent prime years of his adult life incarcerated in harsh conditions, facing physical and emotional threats. He lost invaluable time and experience with his family. The harms his wrongful conviction have caused him—emotional, physical, and otherwise—have been profound and can never be fully compensated.

**Jurisdiction and Venue**

13. This action is brought under 42 U.S.C. § 1983 and Massachusetts law to redress Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

14. This Court has jurisdiction of Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims under 28 U.S.C. § 1367.

15. Venue is proper under 28 U.S.C. § 1391(b).

16. Plaintiff resides in this judicial district and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district. Moreover, on

information and belief, Defendants reside in Massachusetts and are subject to the personal jurisdiction of the courts in this judicial district.

**Parties**

17. At all times relevant to this claim, Plaintiff Clifton Caldwell, has resided in or been incarcerated in the Commonwealth of Massachusetts. He is now 67-years old. At the time of his wrongful arrest, he was 42-years old.

18. Defendants Massachusetts State Police (MSP) Officers Todd Cambra, Natale "Butch" Lapriore, Lori Tripp, and Unknown Massachusetts State Police Officers are current or former officers of the Massachusetts State Police. These Defendants were responsible for investigating crimes, including the crime at issue in this case, and for supervising other police officer Defendants. These Defendants committed, facilitated, and approved the constitutional violations at issue in this case.

19. Defendants Brockton Police Officers Jennifer Hayes, Emanuel Gomes, and Unknown Brockton Police Officers (collectively Brokton Police Defendants") were all Brockton police officers at the time of the events giving rise to this matter. All these Defendants were responsible for investigating crimes, including the crime at issue in this case, and/or for supervising other police officer Defendants. They committed, facilitated, and approved the constitutional violations at issue in this case.

20. Defendant City of Brockton, Massachusetts is a municipality of the Commonwealth of Massachusetts, which oversees the Brockton Police Department

(BPD). Brockton Police Defendants referenced above were employed by the City of Brockton or were acting as agents of the City of Brockton and/or the BPD while conducting the investigation described in this Complaint. Defendant City of Brockton is responsible for the policies and practices of the BPD that were implemented by Defendants in this case. Finally, Defendant City of Brockton is responsible under Massachusetts law for any judgment entered against Defendants.

21. Defendant Frank Middleton is and/or was an Assistant Plymouth County District Attorney who participated in the investigation stage of the investigation that led to Plaintiff's wrongful arrest and prosecution. He acted under color of law and within the scope of his employment for the Plymouth County District Attorney's Office. Defendant Middleton is sued for actions he undertook in conspiracy with the Police Officer Defendants in his investigatory capacity.

22. Nora Buckley is a current or former victim's advocate who acted under the color of law within the scope of her employment with the Commonwealth of Massachusetts in conspiracy with the Defendant Police Officers in her investigatory capacity.

23. Robin Anapol is a current or former employee of the Massachusetts Department of Children and Families who acted under the color of law in conspiracy with the Defendant Police Officers in her investigatory capacity.

24. At all times relevant to the events described in this Complaint, each of the Defendants identified above acted under color of law, within the scope of his employment, and as an investigator/law enforcement officer.

25. Each of the Defendants is sued in his/her individual capacity, unless otherwise noted.

**FACTS**

26. In 1999, Plaintiff's 12-year-old niece (S.J.) claimed that she was raped eight years earlier by her father (Plaintiff's brother) while Plaintiff and his other brother helped.

27. The claimed assault would have occurred during a divorce of S.J.'s parents when S.J. was four-years-old.

28. There was never any physical evidence to support any claims of an assault against S.J.

29. There was never any evidence of trauma or bleeding from the four-year-old purported victim or complaints of injury at the time of the purported assault.

30. No medical provider ever provided any opinions that there was ever any evidence of any such trauma.

31. S.J. made no claims relating to the alleged assault at the time she claimed it occurred.

32. Moreover, S.J. admitted to lying under oath previously in claims that her uncle (Plaintiff's brother) had assaulted her.

33. Nevertheless, Defendants Hayes, Middlebrook, Buckley, Anapol, and/or other unknown actors acting under color of law fabricated S.J.'s claim of an assault using suggestive techniques that caused the vulnerable child to make up an

incriminating story against Plaintiff and his brothers.

34. Defendants Hayes, Middlebrook, Buckley, Anapol, and/or other unknown actors acting under color of law fabricated additional purported evidence that was used to further Plaintiff's wrongful prosecution.

35. Defendant Anapol and/or other unknown actors were aware of other allegations by S.J. that were known by her and/or them to be untrue but withheld this evidence from Plaintiff.

**Police Preyed on Plaintiff**

36. The lack of incriminating evidence, or any physical evidence of an assault, led to Plaintiff's brothers' acquittal at trial regarding S.J.'s claims.

37. Plaintiff was not so lucky because police, including but not limited to Defendants Cambra, Tripp, and Hayes, fabricated a false "confession" from a purported jailhouse "informant," George Thompson.

38. These investigators convinced Thompson to fabricate the "confession" and/or fabricated evidence through Thompson by manipulating Plaintiff into providing statements that Thompson could falsely claim to be a confession because Plaintiff had difficulties in communicating clearly.

39. Defendant Gomes was made aware of the false "confession," but did not disclose that the "confession" was fabricated to prosecutors or Plaintiff.

40. Thompson's false information did not happen in a vacuum.

41. MSP officer Todd Cambra had used Thompson previously to solicit a purported confession from a suspect.

42. In fact, Thompson had a long history of providing evidence of "confessions" against criminal defendants.

43. Police hid the extent of this relationship from prosecutors and Plaintiff's counsel.

44. In addition, Defendant Buckley put Thompson in touch with the mother of the victim who offered money to Thompson.

45. These contacts were not disclosed to Plaintiff.

46. Because the evidence was suppressed, Plaintiff was denied the opportunity to pursue discovery about the extent of this relationship or to raise the issues of it at trial.

47. This misconduct was the only difference between the acquittals secured by his brothers and Plaintiff's wrongful conviction.

48. Police arrested Plaintiff in November 1999.

49. Plaintiff was wrongfully jailed from November 24, 1999 until December 9, 1999. It was during this period of wrongful imprisonment that police placed Thompson into Plaintiff's cell to procure the false "confession."

50. Thompson did comply with Cambra, Tripp, Hayes, and/or other police investigator(s)' request(s) to secure the false jailhouse "confession."

51. There was no forensic evidence introduced against Plaintiff at trial so that no physical evidence connected to Plaintiff to any alleged crime.

52. Instead, the only evidence was the suspect testimony of S.J. (who another jury declined to believe) and jailhouse-informant Thompson.

53. Despite the lack of physical evidence, the jury convicted Plaintiff.

54. Plaintiff was sentenced to 27-35 years in prison.

55. During the wrongful imprisonment, Defendant Lapriore became aware that George Thompson was the source of Plaintiff's conviction.

56. As part of his employment with the Massachusetts State Police, Defendant Lapriore knew that Thompson was a long-time informant for the police.

57. In fact, Defendant Lapriore had previously acted as a surety for Thompson in a prior criminal case as part of the long-standing relationship between Thompson and law enforcement officers that provided incentives (unknown to anyone but officers and Thompson) for Thompson to create evidence against criminal defendants.

58. Defendant Lapriore suppressed that Thompson had a history of creating evidence for law enforcement officers from Plaintiff in exchange for benefits from law enforcement officers, including himself.

59. Defendants along with the City of Brockton and/or the BPD suppressed evidence of the above-described fabrication and/or other exculpatory evidence (including but not limited to inducements for Thompson to manufacture evidence) from Plaintiff during the entirety of his wrongful imprisonment.

**Clifton Caldwell's Wrongful Imprisonment**

60. Throughout his lengthy incarceration and at multiple parole hearings, Plaintiff always maintained his innocence.

61. His imprisonment was made worse because he was convicted of a sex-

crime involving a child—he was subject to additional violence, harassment, and/or terror.

62. The Supreme Judicial Court vacated Plaintiff's rape conviction and on January 11, 2023, the Commonwealth dismissed all charges against Plaintiff relating to the prosecution.

**Plaintiff's Damages**

63. Plaintiff was 42-years old—in the prime of his life—when he was wrongly arrested and convicted.

64. He would spend over 18 years wrongly imprisoned for something he did not do.

65. Plaintiff's whole life was turned upside down without any warning.

66. Because of the investigators' misconduct, Plaintiff missed out on participating in the lives of his family and friends.

67. Plaintiff was deprived of opportunities to engage in meaningful labor, to develop a career, and/or to pursue his interests and passions.

68. Plaintiff was deprived of all the basic pleasures of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as anautonomous human being. Plaintiff was ordered to sleep, eat, dress, and meet all his life needs based on an arbitrarily imposed schedule.

69. During his many years of wrongful imprisonment, Plaintiff was detained in harsh and dangerous conditions in maximum security prisons. He was physically injured and assaulted numerous times through decades of wrongful

imprisonment. These harms were even further enhanced because he was wrongfully imprisoned for a sex-crime relating to a child. He was also physically harmed by his imprisonment each day that he was imprisoned by the nature of the physical conditions he was forced to live in.

70. The conditions described above caused Plaintiff to suffer from chronic medical conditions that continue to this day.

71. Plaintiff was forced to rely on his imprisoners to meet his basic needs.

72. Among other hardships, he had difficulty getting medical care while he was in prison. Even when he received medical care, it was often substandard.

73. Because of the ongoing physical abuse, Plaintiff suffered severe physical harm, including but not limited to: (1) concussions from blows to the head; (2) strapped to his bed; (3) repeatedly beaten; and (4) suffered a broken hip (even after fracturing his hip, prison guards forced him to walk, causing severe pain).

74. His harms were exacerbated because of his learning disability, hearing loss, and long-term disabilities.

75. His unlawful arrest, prosecution, and imprisonment caused him to suffer from mental and physical health problems, which continue to this day.

76. In addition to the severe trauma of wrongful imprisonment and Plaintiff's loss of liberty, the investigators misconduct continues to cause Plaintiff ongoing health effects.

77. In addition to being wrongfully imprisoned for decades, government officials publicized Plaintiff's arrest, thereby permanently negatively impacting his standing in the community.

**COUNT I**
**42 U.S.C. § 1983 – Due Process**

78. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

79. In the manner described more fully herein, Defendants, while acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

80. Defendants deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

81. Defendants fabricated and solicited false evidence, including testimony that they knew to be false, implicating Plaintiff in the crime, obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial.

82. In addition, Defendants produced a series of false and fraudulent reports and related documents, which they inserted into their file and presented to state prosecutors and judges. These documents, which were used to show Plaintiff's purported connection to the crime, contained statements and described events that were fabricated, and that Defendants knew to be false. Defendants signed these

reports, both as investigators and as supervisors, despite their knowledge that the information contained in those reports was false.

83. Defendants also procured false "confession" evidence of Plaintiff, implicating him in the crime. Defendants used the resulting false "confession" to taint Plaintiff's criminal trial.

84. Defendants did not disclose that the "confession" was false.

85. In addition, Defendants concealed exculpatory and fabricated additional inculpatory evidence that is not yet known to Plaintiff.

86. Defendants suppressed the exculpatory evidence (including but not limited to the fact that inculpatory evidence was fabricated) each end every day that Plaintiff was wrongly imprisoned so that it was a continuous violation.

87. Defendants who were supervisors charged with overseeing the investigation and the other Defendants knew full well of this misconduct, the suppression of exculpatory evidence, and the fabrication of a false case against Plaintiff. These supervisors nevertheless intentionally ignored Defendants' misconduct, and decided to make Plaintiff responsible for a crime he did not commit, rather than directing the officers to go out and fully investigate the murder.

88. Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued through a conviction.

89. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and/or in total disregard of the truth and Plaintiff's clear innocence.

90. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

91. Plaintiff's injuries were caused by the official policies of Defendant City of Brockton and the BPD, by the practices and customs of Defendant City of Brockton, the BPD and by the actions of final policymaking officials for Defendant City of Brockton, and the BPD. For example, the Brockton Police Department maintained an unwritten custom or policy to not investigate exculpatory evidence and to withhold it from criminal defendants. It also failed to have policies to prevent the false introduction of evidence from confidential informants and/or the prevention of the introduction of false evidence into investigations despite the obvious need for such policies.

92. At all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Brockton promulgated deficient rules, regulations, policies, and/or procedures governing witness interviews, the use of incentives to fabricate witness testimony, the preservation and disclosure of investigative materials and evidence, in-court testimony, preparation and presentation of witness testimony, and training, supervision, and discipline of

employees and agents of the City of Brockton, including employees and agents of the BPD. These deficient rules, regulations, policies, and/or procedures led to the introduction of fabricated evidence that was used against Plaintiff.

93. These rules, regulations, policies, and procedures were implemented by employees and agents of Defendant City of Brockton, including the Brockton Defendants, who were responsible for conducting investigations of crimes in and around Brockton, Massachusetts.

94. Defendants' fabrication of inculpatory evidence and suppression of exculpatory evidence occurred under BPD policy, through which Brockton police officers regularly kept exculpatory evidence from criminal defendants. This policy was designed to encourage successful prosecutions despite evidence of innocence.

95. Plaintiff's wrongful conviction further resulted from the failure to supervise and train Brockton police officers regarding the: (1) proper use of witness interviews; (2) proper handling of exculpatory evidence; (3) the government's obligation to disclose exculpatory evidence to criminal defendants; and (4) the use of "informants." The City's failure to supervise and train its officers showed deliberate indifference to the risk that an innocent person like Plaintiff would be convicted of a crime he did not commit.

96. These widespread practices were allowed to flourish because the leaders, supervisors, and policymakers of Defendant City of Brockton directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and discipline their officers,

agents, and employees who withheld material evidence, fabricated false evidence and witness testimony, and pursued wrongful prosecutions and convictions.

97. The above-described widespread practices, which were so well settled as to constitute the de facto policy of the City of Brockton, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

98. The misconduct described in this Count was undertaken under the policy and practices of Defendant City of Brockton in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Brockton and the Brockton Police Department or were actually committed by persons with such final policymaking authority.

99. Plaintiff's injuries were caused by Defendants, many of whom were officers, agents, and employees of the City of Brockton, and the Brockton Police Department including but not limited to the individually named Brockton Defendants, who acted under the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

**COUNT II**
**42 U.S.C. § 1983 – Federal Malicious Prosecution**

100. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

101. In the manner described above, Defendants, acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of

law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

102. In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

103. The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

104. Defendants deprived Plaintiff of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of his liberty, and Massachusetts law does not provide an adequate state-law tort remedy to redress that harm.

105. In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent, through Defendants' fabrication and suppression of evidence and their use of unduly suggestive identification procedures.

106. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

107. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

108. On January 11, 2023, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence.

109. The Brockton Police Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Brockton, and by Defendants who were final policymakers for Defendant City of Brockton, in the manner more fully described above.

**COUNT III**
**42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights**

110. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

111. After the assault claim, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for crimes that he did not commit, and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Complaint.

112. In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

113. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

114. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

115. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

116. The Brockton Police Defendants' misconduct described in this Count was undertaken under the policies, practices, and customs of Defendant City of Brockton, and by Defendants who were final policymakers for Defendant City of Brockton, in the manner more fully described above. Moreover, that multiple BPD officers conspired with each other to deprive Plaintiff of his rights is further evidence of unlawful policies, practices and customs of Defendant City of Brockton in that each believed that he could engage in the misconduct complained of under those policies, practices, and customs and/or that he/she/they would not be held accountable for doing so.

## COUNT IV
## 42 U.S.C. § 1983 – Failure to Intervene

117. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

118. In the manner described above, during the constitutional violations described herein, one or more Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

119. As a result of Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress and permanent physical damage. These Defendants had ample, reasonable opportunities to prevent this harm but failed to do so.

120. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

121. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

122. Brockton Police Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Brockton, and by Defendants who were final policymakers for Defendant City of Brockton, in the manner more fully described above. Moreover, that multiple BPD officers failed to intervene to prevent the deprivation of Plaintiff's rights is further evidence of unlawful policies, practices and customs of Defendant City of Brockton in that each believed that he could engage in the misconduct complained of under

those policies, practices, and customs and/or that he would not be held accountable for doing so.

**COUNT V**
**Intentional Infliction of Emotional Distress**

123. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

124. As a proximate result of the initiation of the prosecution of Plaintiff without probable cause and with malice by defendants, Plaintiff was convicted and imprisoned for over 18 years.

125. The acts and omissions of defendants in initiating the prosecution of Plaintiff was made without probable cause. Fabricating evidence and withholding exculpatory evidence to convict an innocent man is extreme and outrageous conduct, beyond all possible bounds of decency and utterly intolerable in a civilized community.

126. The defendants' acts and omissions caused Plaintiff to suffer severe emotional distress of a nature that no reasonable person could be expected to endure as described above.

127. These actions constitute the tort of intentional infliction of emotional distress under Massachusetts law.

128. As a result of the Defendants' intentional infliction of emotional distress, Plaintiff has suffered damages as described above.

129. Defendants are liable to the Plaintiff for injuries and damages resulting from the fact that by their acts and omissions alleged herein, they intentionally inflicted emotional distress upon the Plaintiff.

**COUNT VI**
**State-Law Claim – Malicious Prosecution**

130. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

131. In the manner described above, Defendants, acting as investigators, individually, jointly, or in conspiracy with one another, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

132. In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause.

133. These judicial proceedings were instituted and continued maliciously, resulting in injury.

134. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

135. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical

and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

136. On January 11, 2023, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence, when the Commonwealth of Massachusetts entered a *nolle prosequi*.

137. Plaintiff presented his state-law claims included in this Complaint to Defendants, as required by Massachusetts law, on May 22, 2024.

**COUNT VII**
**State-Law Claim – Negligence**

138. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

139. Defendants owed Plaintiff a duty to refrain from framing him for a crime he had not committed and to conduct a legal and thorough investigation of the claimed assault.

140. In the manner described more fully above, the actions, omissions, and conduct of Defendants breached this duty.

141. The misconduct described in this Count was objectively unreasonable and was undertaken in total disregard of the truth and Plaintiff's clear innocence.

142. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**COUNT VIII**
**State-Law Claim – Mass. Gen. Laws, Ch. 12, § 11I**

143. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

144. Defendants interfered with Plaintiff's exercise and enjoyment of rights guaranteed to him by the U.S. Constitution and the constitution and laws of the Commonwealth of Massachusetts by fabricating false "confession" evidence against him.

145. Defendants' misconduct deprived Plaintiff of his rights under federal and state law by use of threats, intimidation, and coercion, thereby violating the Massachusetts Civil Rights Act.

**COUNT IX**
**State-Law Claim – Civil Conspiracy**

146. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

147. As described more fully in the preceding paragraphs, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

148. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

149. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

150. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**WHEREFORE**, Plaintiff, CLIFTON CALDWELL, respectfully requests that this Court enter a judgment in his favor and against MASSACHUSETTS STATE POLICE OFFICERS TODD CAMBRA, NATALE LAPRIORE, LORI TRIPP, UNKNOWN MASSACHUSETTS STATE POLICE OFFICERS, BROCKTON POLICE OFFICERS JENNIFER HAYES, EMANUEL GOMES, UNKNOWN BROCKTON POLICE OFFICERS, CITY OF BROCKTON, MASSACHUSETTS, ASSISTANT PLYMOUTH COUNTY DISTRICT ATTORNEY FRANK MIDDLETON, NORA BUCKLEY, and ROBIN ANAPOL, awarding compensatory damages, attorneys' fees and costs against each Defendant, punitive damages against each of the individual Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, Clifton Caldwell, hereby demands a trial by jury under Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

Clifton Caldwell

By his attorneys,

/s/ Mark Loevy-Reyes
Mark Loevy-Reyes, BBO No. 707974
LOEVY & LOEVY
398 Columbus Avenue, Suite 294
Brockton, MA 02116
(312) 243-5900
mark@loevy.com