# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CLIFTON CALDWELL,                                )
                                                 )
      Plaintiff,                           )
                                                 )
v.                                               )
                                                 )
MASSACHUSETTS STATE POLICE                       )    No. 1:24-cv-12924-JEK
OFFICERS TODD CAMBRA, NATALE                     )
LAPRIORE, LORI TRIPP, and UNKNOWN                )
MASSACHUSETTS STATE POLICE                       )
OFFICERS, BROCKTON POLICE OFFICERS               )
JENNIFER HAYES, EMANUEL GOMES, and               )    **Jury Trial Demanded**
UNKNOWN BROCKTON POLICE                          )
OFFICERS, the CITY OF BROCKTON,                  )
MASSACHUSETTS, ASSISTANT                         )    Leave to File Granted on
PLYMOUTH COUNTY DISTRICT                         )    February 26, 2025
ATTORNEY FRANK MIDDLETON, NORA                   )
BUCKLEY, and ROBIN ANAPOL                        )
                                                 )
      Defendants.                          )
                                                 )
                                                 )

## PLAINTIFF'S RESPONSE TO THE BROCKTON DEFENDANTS' MOTION TO DISMISS

Plaintiff, CLIFTON CALDWELL, under Federal Rule of Civil Procedure 12, responds to the Brockton Defendants' motion to dismiss (Dkt. No. 24) as follows:

### INTRODUCTION

Plaintiff seeks redress for decades of wrongful imprisonment for an alleged crime that he did not commit and that likely never happened. He, along with his two brothers, were charged with sexually assaulting Plaintiff's niece when the girl was four-years old.

These charges came about only after law enforcement officers and other government actors helped convince the girl years later that the crime had happened. There was no contemporaneous physical trauma reported to the girl. Yet investigators caused the girl to tell a

story that she had been brutally assaulted years before—an assault that, had it actually occurred, would have caused obvious physical injury.

Those fabrications alone were not enough to convict Plaintiff—Plaintiff's brothers were acquitted of the related charges against them based on the version developed under the control of investigators. To secure Plaintiff's conviction after his brothers' acquittal, Defendants went further by manufacturing a purported jailhouse informant to implicate Plaintiff. Unknown to Plaintiff, this "informant" repeatedly helped the police secure convictions. When the long-term relationship was finally revealed, Plaintiff was granted a new trial. All charges against him were then dismissed. But not until after Plaintiff served 18 years of wrongful imprisonment.

## BACKGROUND

### Plaintiff Was Wrongfully Convicted on Fabricated Evidence

Plaintiff Clifton Caldwell was wrongfully convicted of aggravated rape. Dkt. No. 1. He was totally innocent. *Id*., ¶12. In October 1999, after Defendants' unlawful intervention, Plaintiff's 12-year-old niece falsely claimed that her father, Plaintiff's brother, had raped her eight years earlier, in or about 1991 (when she was four years old, and her parents were going through a divorce). *Id*., ¶¶2, 26.

After Defendants influenced the girl, her claim expanded to include that Plaintiff and his other brother assisted in the father's assault. *Id*. Problematic for Defendants in their attempts to pursue criminal charges against Plaintiff and his brothers was that, despite their interventions leading to the girl's claims of a brutal assault when she was four years old, there was not one piece of physical evidence of trauma—no reports of bleeding or any contemporaneous reports of pain/injury—to support that fabricated version. *Id*., ¶¶3, 28-31. 32, 50.

**Police Fabricated the Details of An Assault**

Defendants Hayes and Gomes were Brockton Police Department (BPD) officers when Plaintiff's wrongful arrest and prosecution happened. *Id.*, ¶21. They were responsible for investigating crimes, including the crime at issue here, and/or for supervising other police officers. *Id.*

Defendants Hayes, Middleton[1], Buckley, and Anapol fabricated evidence by using suggestive techniques that caused the vulnerable child to make up details of the alleged brutal assault, including Plaintiff's purported involvement. *Id.*, ¶¶3, 81-82. After Defendants intervened, the girl claimed that she could identify Plaintiff at the purported assault only by his laugh. *Id.*, ¶4. This claim was false and based on Defendants' intervention. *Id.*, ¶¶1, 4, 37-40, 101, 105, 125, 131, 144. Plaintiff's two brothers were acquitted of all charges related to the girl's fabricated allegations. *Id.*, ¶¶5, 36.

**Defendants Fabricated Bogus "Jailhouse Informant" Evidence Against Plaintiff**

The only difference in the evidence used against Plaintiff from his acquitted brothers was that Defendants Cambra, Tripp, and Hayes fabricated a purported jailhouse confession against him. *Id*, ¶¶6, 37. These investigators convinced the "informant," an individual named Thompson, to fabricate the "confession" and/or fabricated evidence through the "informant" by manipulating Plaintiff into saying things that Thompson could falsely claim to be a confession based on Plaintiff's obvious difficulties and limitations in processing and communicating clearly. *Id.*, ¶¶38, 81-83. The informant complied with Cambra, Tripp, and Hayes' request to secure the false jailhouse "confession." *Id.*, ¶50.

The "informant" had previously worked with Massachusetts State Police officer

---

[1] Middleton was misstated as Middlebrook in Plaintiff's Complaint.

Defendant Todd Cambra, who had used the "informant" to obtain purported incriminating statements in other cases. *Id.*, ¶¶8-9, 41. In fact, Thompson had a long history of providing evidence of "confessions" against criminal defendants. *Id.*, ¶42. Cambra, among other officers, hid the details related to the prior relationship between the "informant" and police. *Id.*, ¶¶10, 43.

Defendant Gomes, Defendant Hayes' supervisor, was made aware of the false "confession" and other suppressed exculpatory evidence but did not disclose to prosecutors or Plaintiff that the evidence was fabricated. *Id.*, ¶¶39, 87. Defendant Gomes was charged with overseeing Hayes' investigation and knew of this misconduct, the suppression of exculpatory evidence, and the fabrication of a false case against Plaintiff. *Id.*, ¶87. Defendant Gomes ignored Defendant Hayes' misconduct and decided to make Plaintiff responsible for a crime he did not commit, rather than directing Hayes to go out and fully investigate the purported crime. *Id.*

In addition, Defendant Buckley put the informant in touch with the mother of the victim who offered money to the informant for his fabricated inculpation of Plaintiff. *Id.*, ¶44. These contacts were not disclosed to Plaintiff until decades after his wrongful imprisonment. *Id.*, ¶45.

These Defendants suppressed evidence of the above-described fabrication and/or other exculpatory evidence (including but not limited to inducements for the informant to manufacture evidence) from Plaintiff during the entirety of his wrongful imprisonment. *Id.*, ¶¶59, 80. Because the evidence was suppressed, Plaintiff was denied the opportunity to pursue discovery about the extent of this relationship or to raise the issues of it at trial. *Id.*, ¶46. This misconduct was the only difference between Plaintiff's brothers' acquittals and his wrongful conviction. *Id.*, ¶47.

**Plaintiff's Life Was Irrevocably Damaged**

Police arrested Plaintiff in November 1999. *Id.*, ¶48. A jury convicted Plaintiff based on the fabricated evidence and Plaintiff's inability to use the hidden exculpatory evidence to defend

himself. *Id*., ¶53. Plaintiff was sentenced to 27-35 years in prison. *Id*., ¶54.

Plaintiff was 42-years old—in the prime of his life—when he was wrongly arrested and convicted. *Id*., ¶63. Plaintiff served over 18 years in prison for a crime he did not commit. *Id*., ¶¶12, 64. Throughout his lengthy incarceration and at multiple parole hearings, Plaintiff always maintained his innocence. *Id*., ¶60.

Plaintiff's whole life was turned upside down without any warning. *Id*., ¶65. During these years, Plaintiff was deprived of all the basic pleasures of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being. Plaintiff was ordered to sleep, eat, dress, and meet all his life needs based on an arbitrarily imposed prison schedule. *Id*., ¶68.

During his many years of wrongful imprisonment, Plaintiff was detained in harsh and dangerous conditions in maximum security prisons. He was physically injured and assaulted numerous times through decades of wrongful imprisonment. *Id*., ¶¶12, 69. These harms were even further enhanced because he was wrongfully imprisoned for allegedly perpetrating a sex-crime on a child. *Id*, ¶¶61, 69. Because of ongoing physical abuse, Plaintiff suffered severe physical harm, including but not limited to: (1) concussions from blows to the head; (2) being strapped to his bed; (3) repeatedly being beaten; and (4) suffering a broken hip (even after fracturing his hip, prison guards forced him to walk, causing severe pain). *Id*., ¶73. The awful prison conditions caused Plaintiff to suffer from chronic medical conditions that continue to plague him. *Id*., ¶70. His harms were exacerbated because of his learning disability, hearing loss, and long-term physical disabilities. *Id*., ¶74.

The Supreme Judicial Court vacated Plaintiff's rape conviction, and on January 11, 2023, all charges against Plaintiff were dismissed. *Id*., ¶62. Regardless, the harm that his wrongful

conviction caused him—emotional, physical, and otherwise—have been profound, will never heal, and Plaintiff can never be fully compensated. *Id*., ¶¶12, 75.

### Defendant City of Brockton's Policies Caused the Misconduct of its Officers

Defendant City of Brockton (COB) promulgated deficient rules, regulations, policies, and/or procedures governing witness interviews, the use of incentives to fabricate witness testimony, the preservation and disclosure of investigative materials and evidence, in-court testimony, preparation and presentation of witness testimony, and training, supervision, and discipline of employees and agents of the COB, including employees and agents of the BPD. *Id*., ¶92. These deficient rules, regulations, policies, and/or procedures led to the introduction of fabricated evidence that was used against Plaintiff. *Id*.  Defendants' fabrication of inculpatory evidence and suppression of exculpatory evidence occurred under BPD policy, through which Brockton police officers regularly kept exculpatory evidence from criminal defendants to lead to "successful" prosecutions despite evidence of innocence. *Id*., ¶94.

Plaintiff's wrongful conviction further resulted from the failure to supervise and train Brockton police officers regarding the: (1) proper use of witness interviews; (2) proper handling of exculpatory evidence; (3) the government's obligation to disclose exculpatory evidence to criminal defendants; and (4) the use of "informants." *Id*., ¶95. The City's failure to supervise and train its officers showed deliberate indifference to the risk that an innocent person like Plaintiff would be convicted of a crime he did not commit. *Id*.

These widespread practices were allowed to flourish because the leaders, supervisors, and policymakers of Defendant COB directly encouraged, and were thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise, and discipline their officers, agents, and employees who withheld material evidence, fabricated false

evidence and witness testimony, and pursued wrongful prosecutions and convictions. *Id.*, ¶96. The above-described widespread practices, which constituted the *de facto* COB policy, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it. *Id.*, ¶97.

Moreover, Defendant Hayes' and/or Gomes' misconduct was committed under the policy and practices of the COB, in that the constitutional violations were committed with the knowledge or approval of persons with final policymaking authority for the COB and the BPD or were committed by persons with such final policymaking authority. *Id.*, ¶98. Plaintiff's injuries were caused by Defendants Hayes and Gomes, among others, who were officers, agents, and employees of the City of Brockton, and the Brockton Police Department and who acted under the policies, practices, and customs set forth above. *Id.*, ¶99.

## LEGAL STANDARD

In deciding whether to dismiss a complaint under Rule 12(b)(6), a court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citations omitted). A plaintiff, therefore, need only plead facts and causes of action fairly raised by these facts. *Snyder v. Collura*, 812 F.3d 46, 50 (1st Cir. 2016) (citations omitted); *see also* FED. R. CIV. P. 8. Under Rule 8, a complaint need only provide the Defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff is, therefore, not required to make "detailed factual allegations" as Defendants claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Cf. Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 24 (1st Cir. 2016) (explaining that Rule 8 does not "call for the pleading of exquisite factual detail"); *Rodríguez–Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 283

(1st Cir. 2014); *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 718 (1st Cir. 2014). To survive a motion to dismiss, a complaint, therefore, need only state a claim that is plausible on its face. *Twombly*, 550 U.S. at 570. That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. Dismissing a complaint is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Limone v. Condon*, 372 F.3d 39, 43 (1st Cir. 2004) (citations omitted).

## ARGUMENT

### A.  PLAINTIFF SATISFIES PLEADING REQUIREMENTS

Contrary to Defendants' assertions, Plaintiff's Complaint satisfies the pleading requirements under the Federal Rules and Defendants are therefore not entitled to dismissal. "Rule 8(a) is not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific officer." *Hyung Seok Koh v. Graf*, No. 11 C 2605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013). Indeed, claims have been permitted in this District even when pleadings were less specific than here, and, like this case, based on undisclosed misconduct that took places decades earlier. *See Echavarria v. Roach*, No. 16-11118, 2017 WL 3928270, at *4 (D. Mass. Sept. 7, 2017) (allowing similar claims to proceed despite less specific pleadings on decades-old behind-the-scenes misconduct). In *Echavarria*, the Court reasoned:

> Here, Plaintiff is faced with the daunting prospect of obtaining evidence concerning events that occurred more than twenty years ago. Furthermore, if Plaintiff is correct that Defendants fabricated and concealed evidence, such actions by Defendants would add to Plaintiff's difficulty in acquiring the evidence necessary to prove his claims. In addition, it appears Plaintiff is correct that much of the information he seeks is in the sole possession of Defendants. Plaintiff has

8

> identified a discrete group of Defendants that he reasonably believes participated in the conduct that forms the basis of his claims. While he could have listed each Defendant by name in each claim, rather than referring to Defendants collectively, this is not enough to render his claims implausible.

*Echavarria*, 2017 WL 3928270, at *4.

So too here. In contrast, the pleading standard sought by Defendants "would effectively allow police officers to violate constitutional rights with abandon as long as they ensured they could not be identified, even if liability for acting in concert (or for aiding and abetting each other) would otherwise apply." *Hyung Seok Koh*, 2013 WL 5348326, at *4. Moreover, where, as here, circumstances show that the defendants have sole possession of relevant information, pleading standards are relaxed. *See*, *e.g.*, *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2nd Cir. 2008) (involving a post-*Twombly* challenge); *Echavarria*, 2017 WL 3928270, at *4.

It is axiomatic that in evaluating a complaint, a court must "evaluate the cumulative effect of the factual allegations." *Ocasio-Hernandez*, 640 F.3d at 14; *see also Garcia-Catalan v. U.S.*, 734 F.3d 100, 103 (1st Cir. 2013) ("We emphasize that the complaint must be read as a whole. As we have explained, '[t]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action.' For pleading purposes, circumstantial evidence often suffices to clarify a protean issue.") (quoting *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55, 56 (1st Cir. 2013)). When Plaintiff's Complaint is read as a whole, instead of piecemeal as presented by Defendants, it passes the standards required by the Rules.

## B.  PLAINTIFF SUFFICIENTLY PLEADS CLAIMS AGAINST EACH DEFENDANT

### 1.  Plaintiff Pleads Viable Claims for Fabricating Inculpatory Evidence Against Defendant Hayes.

Police officers violate due process when they fabricate evidence, including false witness testimony, for use against a criminal defendant. *Mooney v. Holohan*, 294 U.S. 103, 112-13 (1935); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Limone*, 372 F.3d at 44-45. This due process

theory is entirely independent of the suppression theory discussed below. *See Avery v. City of Milwaukee*, 847 F.3d 433, 438-443 (7th Cir. 2017).

Defendant Hayes generated false allegations against Plaintiff by, among other things, manipulating the young girl to believe that Plaintiff committed a crime against her when she was young, and separately manufacturing a false "jailhouse confession." Dkt. No. 1 ¶¶33-34, 37. Plaintiff's allegations on this score are sufficient. Assuming all facts and inferences as pled, Plaintiff alleges viable claims of fabrication against Defendant Hayes. Defendants are plain wrong that Plaintiff did not identify sufficient details to put Defendant Hayes on notice of Plaintiff's claims against her. Dkt. 24, 9-10.

Despite acknowledging cases, *Cosenza v. City of Worcester*, 355 F.Supp.3d 81, 90 (D. Mass. 2019) and *Echavarria*, 2017 WL 3928270, that support Plaintiff's pleading here (Dkt. No. 24, 7), Defendants, nevertheless, incorrectly contend that Plaintiff's claims are somehow insufficient. Dkt. 5-6. They rely on cases, unlike here, in which the plaintiff failed to plead the basic elements needed to allege sufficient claims. One of them related to the failure to allege personal knowledge of a supervisor (*Canales v. Gatzunis*, 979 F. Supp. 2d 164 (D. Mass. 2013)), while another is similarly distinct—a *pro se* case filed with facially deficient pleadings (*Fruzzetti v. Easton Police Officers*, No. 22-cv-11330-ADB, 2024 WL 841416 (D. Mass. Feb. 28, 2024)). In fact, *Fruzzetti* supports Plaintiff argument *against* dismissal by clarifying that allegations of fabricating evidence are viable, although the *pro se* plaintiff there failed to make those allegations in a cogent manner. Plaintiff's Complaint does not suffer from those deficiencies.

Plaintiff was completely innocent of any charges against him and never confessed to committing any illegal act against his niece. Dkt. No. 1, ¶¶ 1, 37-40, 101, 105, 125, 131, 144. A reasonable inference is that police manipulated witnesses to fabricate the false evidence that was

used to arrest, charge, and convict Plaintiff. Requiring anything more would virtually eliminate claims such as Plaintiff's because criminal suspects and defendants are not invited to participate in the misconduct that leads to fabricated evidence. What Defendants are basically claiming here is that Plaintiff must know the details of each step taken against them in secret. Under the pleading rules, that requirement is a nonstarter.

Defendants weakly suggest that an unpublished case, *Mondol v. City of Summerville*, 2017 WL 4845019 (D. Mass. Oct. 26, 2017) (Dkt. 24, 10-11), supports dismissal based on allegations of fabricating evidence through suggestion from a young accuser. A cursory reading of it reveals, however, that it is not supportive at all. First*, Mondol* was a summary judgment case in which the Court concluded that the plaintiff had unearthed no actionable evidence of a constitutional violation by any defendant. Hence, the Court there allowed the claim to proceed through discovery in the first place (as Plaintiff seeks here).  Second, the claims did not include fabrication and/or suppression claims as here. Third, the facts of that case are different—it was a contemporaneous investigation of an older accuser, not a police investigation of years-old claims by a younger, more susceptible child. In any event, Plaintiff is entitled to the same process as the plaintiff in *Mondol*—discovery to put meat on the bones of his claims.

### 2.  Plaintiff Pleads Viable Claims for Suppression of Exculpatory Evidence Against Defendants Hayes and Gomes.

Starting decades before Plaintiff's wrongful conviction, the Supreme Court held that the suppression of evidence favorable to a defendant violated due process, applying that rule to all state actors—prosecutors and police alike. *Pyle v. State of Kansas*, 317 U.S. 213, 215-16 (1942). This fundamental precept has been consistently reaffirmed. *E.g.*, *Brady v. Maryland*, 373 U.S. 83 (1963). The First Circuit has long recognized that section 1983 due process claims may be brought against police who withhold exculpatory and impeachment evidence, causing wrongful

11

convictions. *Drumgold v. Callahan*, 707 F.3d 28 (1st Cir. 2013); *Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011).

Evidence is material when there is "any reasonable likelihood" that it could have "affected the judgment of the jury." *Wearry v. Cain*, 577 U.S. 385, 392 (2016) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)); *Napue*, 360 U.S. at 271. A litigant "need not show that he 'more likely than not' would have been acquitted had the new evidence been admitted. . . . He must show only that the new evidence is sufficient to 'undermine confidence' in the verdict." *Id*. (citing *Smith v. Cain*, 565 U.S. 73, 75-76 (2012)); *see also United States v. Sepulveda*, 15 F.3d 1216, 1220 (1st Cir. 1993) ("[The] undermine confidence formula suggests that reversal might be warranted in some cases even if there is less than an even chance that the evidence would produce an acquittal.") (internal quotation marks omitted).

Critically, when conducting its analysis, a court must consider the suppressed evidence cumulatively, not piece by piece. *Glossip v. Oklahoma*, 604 U. S. ____, Slip Opinion at 22 (Feb. 25, 2025); *Wearry*, 577 U.S. at 394; *Kyles v. Whitley*, 514 U.S. 419, 436 (1995). Whether evidence is material also depends on the strength of other evidence in the criminal proceedings—it might take only a little evidence to disturb an already-weak conviction. *United States v. Agurs*, 427 U.S. 97, 113 (1976). Importantly, it is firmly established that evidence that would impeach a key eyewitness is material. *Giglio*, 405 U.S. at 153-54; *see also Wearry*, 565 U.S. at 75 (impeachment evidence about eyewitness was material when the eyewitness was the only evidence connecting defendant to the crime); *Conley v. United States*, 415 F.3d 183, 191 (1st Cir. 2005) (suppression of evidence that impeached an essential government witness was material where it would have raised serious doubts about the witness' memory). In fact, the United States Supreme Court just reaffirmed this foundational principle:

> Evidence can be material even if it "goes only to the credibility of the witness," indeed, "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence,"

*Glossip*, 604 U. S. \_\_\_\_, Slip Opinion at 19 (quoting *Napue*, 360 U. S., at 269).

Applying these principles here, Defendants Hayes and Gomes are not entitled to dismissal of Plaintiff's claims that each of them suppressed material exculpatory evidence related to the only evidence introduced against Plaintiff, thereby leading to a violation of Plaintiff's due process rights and his malicious prosecution. The only evidence ever introduced against Plaintiff was by the child who was manipulated by Hayes (among others), and by a "jailhouse informant." Dkt. No. 1, ¶¶51-52. Defendant Gomes knew that the "jailhouse confession" was fabricated, but never disclosed that information. *Id*., ¶39. Suppressing the surreptitious means of gathering that evidence deprived Plaintiff of attacking the jailhouse confession. That alone is enough to establish the materiality of Defendant Hayes and Gomes' suppressed misconduct, because Plaintiff could have used it to undermine the weak testimony that was the sole evidence against him. Plaintiff's claims against Defendant Hayes for malicious prosecution and violation of Plaintiff's due process rights based on her suppressing material exculpatory evidence should not be dismissed.

### 3. Plaintiff Pleads Viable Claims for Arrest and Prosecution Without Probable Cause Against Defendants Hayes and Gomes.

Plaintiff also pleads a viable claim that Defendant Hayes initiated legal process against Plaintiff without probable cause. Plaintiff alleges that Hayes: (1) caused Plaintiff's seizure under legal process; (2) the seizure was made without probable cause (based on the above-described fabricated/suppressed evidence); and (3) all criminal proceedings terminated in Plaintiff's favor. *See Manuel v. City of Joliet*, 580 U.S. at 357 366-67 (2017); *Hernandez-Cuevas v. Taylor*, 723 F 3d 91, 101 (1st Cir. 2013); *Pagan-Gonzalez v Moreno* 919 F.3 d 582, 601 (1st Cir. 2019).

A defendant "institute[s] criminal proceedings against another if he cause[s] those proceedings to be initiated." *Limone v. U.S.*, 579 F.3d 79, 89 (1st Cir. 2009). That includes any joint investigative action giving rise to the criminal case. *Santiago v. Fenton*, 891 F.2d 373, 387 (1st Cir. 1989). Defendants who act in conspiracy to suppress or fabricate evidence and who cause charges to be filed are all involved in initiating the proceedings. *Id.*; *see also Schand v. Springfield*, 380 F. Supp. 3d 106, 137 (D. Mass. 2019). As discussed above, Plaintiff sufficiently alleges that Hayes and Gomes directly participated in framing Plaintiff for a sexual assault.

Plaintiff sufficiently alleges that he was arrested, prosecuted, and convicted without probable cause. In fact, he alleges that the only evidence against him was fabricated by the investigators working on the case. Dkt. No. 1, 6, 33-34, 50-51, 81-82. Probable cause exists if the known facts and circumstances are enough "to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed" a crime. *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009) (citations omitted). Removing all the misconduct that investigators, including Defendants Hayes and Gomes, engaged in, there was no basis to arrest or prosecute Plaintiff. Plaintiff's allegations neatly satisfy the requirements to claim arrest and/or prosecution without probable cause.

Nevertheless, Defendants argue that probable cause existed against Plaintiff. Dkt. No. 24, 11-12. That is a nonstarter. Defendants are not entitled to an inference of probable cause. First, probable cause is a quintessential fact question for the jury. *Hilchey v. Haverhill*, 537 F. Supp. 2d 255, 260 (D. Mass. 2008). And it is axiomatic that police officers may not manufacture their own probable cause for arrest. *Hernandez-Cuevas*, 723 F.3d 91. It is further worth noting here that it is firmly established that false evidence cannot support probable cause, *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), and any presumption of probable cause normally afforded by judicial

14

proceedings is nullified when the proceedings are based on false evidence, *Manuel*, 580 U.S. at 368-369 (2017); *Malley v. Briggs*, 475 U.S. 335, 345 (1986).  As stated above, Plaintiff's Complaint sufficiently alleges that the inculpatory evidence against him was fabricated and that his defense was hampered by the suppression of evidence that could have undermined the fabricated inculpatory evidence. Defendants' Motion on this basis should be denied.

### 4. Plaintiff Pleads Viable Claims for Failing to Intervene Against Defendants Hayes and Gomes.

Defendants Hayes and Gomes are not entitled to qualified immunity for failing to intervene to stop their fellow officers from violating Plaintiff's rights. Failure to intervene or bystander liability is premised on a law enforcement officer's continuous duty to uphold the law, even if it is the officer's colleague who is violating the law. Therefore, if a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly. *Randall v. Prince George's County, Md.*, 302 F.3d 188, 203 (4th Cir. 2002) (officers could be liable as bystander to wrongful seizure and detention) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)); *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (bystander liability allowed for failing to stop fellow officer from wrongly detaining citizen); *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982) (officer liable for failing to intervene in false arrest); *see also Monteiro v. Cormier*, No. 1:21-cv-00046-MSM-LDA2023 WL 6314658, *14 (D. R.I. Sept. 28, 2023) (summary judgment denied on claim of failing to intervene in arrest without probable cause).

Defendants' suggestion that bystander liability is limited only to excessive force cases is not supported by binding precedent that expressly limits bystander liability only to excessive force or bodily integrity cases. In fact, the cases cited above involve bystander liability outside of

the excessive force context. The reasoning is fundamental—police officers are required to uphold the law, which includes intervening when fellow officers break the law, regardless of the context. Defendants' request to limit failure to intervene liability has no basis.

### 5. Plaintiff Pleads Viable Claims for Supervisor Liability Against Defendant Gomes.

Supervisors are liable under § 1983 for their own actions that result in violations of constitutional rights by a subordinate. *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6-7 (1st Cir. 1998). As discussed above, the Complaint sufficiently supports the conclusion that Defendants Hayes and Gomes violated Plaintiff's rights. Similarly, the Complaint sufficiently alleges that those constitutional violations were caused by the deliberate indifference of the supervisor Defendant, Defendant Gomes.

A viable supervisor liability claim establishes that the constitutional violations the plaintiff suffered were the foreseeable result of the supervisors' deliberate indifference to a substantial risk of harm. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994). Deliberate indifference means a failure to take available measures to avoid a risk of harm of which the supervisor had actual or constructive knowledge. *Figueroa-Torres v. Toldeo-Davila*, 232 F.3d 270, 279 (1st Cir. 2000). To pursue the claims that a supervisor is deliberately indifferent, Plaintiff must allege: (1) "that the officials had knowledge of facts," from which (2) "the official[s] can draw the inference" (3) "that a substantial risk of serious harm exists." *Ruiz–Rosa v. Rullán*, 485 F.3d 150, 157 (1st Cir. 2007) (alteration in original) (quoting *Calderon–Ortiz v. LaBoy–Alvarado*, 300 F.3d 60, 65 (1st Cir. 2002)). Plaintiff sufficiently alleges that Gomes was aware of the fabricated "confession" and other misconduct yet allowed it to proceed by acquiescing to or disregarding the conduct. Dkt. No. 1, ¶¶19, 39, 87. His Complaint therefore sufficiently spells out these requirements.

In addition, Plaintiff has alleged another requirement, that there is a causal link between the indifference and the constitutional violations committed by the other Defendants. *See Feliciano–Hernández v. Pereira–Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (quoting *Soto–Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011). Only in rare circumstances can this question be decided without a jury, *Young v. Providence*, 404 F.3d 4, 23 (1st Cir. 2005), and causation in this context "need not take the form of knowing sanction, but may include tacit approval of, acquiescence in, or purposeful disregard of, rights-violating conduct." *Hoyos*, 151 F.3d at 7. His claims of supervisory liability against Defendant Gomes are viable and should proceed.

### 6.  Plaintiff Pleads Viable Claims for Conspiracy Against Defendants Hayes and Gomes.

Plaintiff's section 1983 conspiracy claim should also proceed. "A civil rights conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" *Santiago*, 891 F.2d at 389 (1st Cir. 1989); *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008). Plaintiff's complaint sufficiently alleges such conspiracy. Dkt. No. 1, ¶¶21-23, 79, 101, 111-115, 131, 147-149.

To the extent Defendants assert in cursory fashion that Plaintiff lacks evidence that the Defendants entered an agreement to violate his rights, they again impermissibly fail to construe the facts in Plaintiff's favor and "ignore[ ] the reasonable inferences that might be drawn by a jury regarding coordination among Defendants to obtain [the plaintiff's]'s conviction through [violations of due process]." *Schand*, 380 F.Supp.3d at 136.

"[T]he agreement that rests at the heart of a conspiracy is seldom susceptible of direct

proof: more often than not such an agreement must be inferred from all the circumstances." *Earle v. Benoit*, 850 F.2d 836, 843 (1st Cir. 1988). The First Circuit has decided that a jury should decide conspiracy claims where circumstantial evidence as limited as conversations between defendant police officers during an investigation permits the inference that the defendants agreed to violate a plaintiff's constitutional rights. *Santiago*, 891 F.2d at 389; *see also Gual Morales v. Hernandez Vega,* 579 F.2d 677, 680-81 (1st Cir. 1978) (noting that summary judgment should be granted with "great circumspection" where a conspiracy claim turns on a defendant's state of mind).

The facts as alleged in the Complaint and viewed in Plaintiff's favor establish that Defendant Hayes and other officers fabricated inculpatory evidence to frame Plaintiff for a crime he did not commit. They further support that Defendants Hayes, Gomes, and other officers suppressed exculpatory evidence from Plaintiff. Those Defendants made up the young girl's story through suggestion, and, to seal the deal against Plaintiff when that fabricated story may prove alone insufficient, Defendants created a "jailhouse confession" from a serial informant. In short, police investigators who jointly investigated the false allegations, with the aim of securing Plaintiff's criminal conviction, suppressed exculpatory evidence and fabricated inculpatory evidence. These are sufficient allegations that Defendants were participants in a common venture to railroad Plaintiff. *Schand*, 380 F. Supp. 3d at 136.

### C.  QUALIFIED IMMUNITY CANNOT SHIELD FABRICATING INCULPATORY EVIDENCE OR SUPPRESSING EXCULPATORY EVIDENCE

Defendants' attempt to hide behind the shield of qualified immunity regarding Plaintiff's due process, arrest/prosecution without probable cause, and failure to intervene claims should fail. Qualified immunity does not "shield public officials who, from an objective standpoint, should have known that their conduct was unlawful." *Haley*, 657 F.3d at 47. A court analyzing

qualified immunity asks (1) whether a reasonable jury could conclude that the facts "make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). This test is not about whether a particular legal claim was actionable at the time.

Plaintiff unquestionably alleges viable claims on the first question. He alleges that Defendant Hayes intentionally fabricated inculpatory evidence and that Defendants Hayes and Gomes suppressed material exculpatory evidence. These actions violated Plaintiff's right to due process and led to Plaintiff's arrest/prosecution without probable cause.

On the second question, Supreme Court and First Circuit precedents hold conclusively that the due process rights in question were firmly established before Plaintiff's criminal trial. *Limone* held that the due process right not to be framed by law enforcement using false testimony was established in 1967, and even if it had not been, the violation would have been so obvious that qualified immunity would be precluded. 372 F.3d at 45-48 (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). Similarly, *Haley* holds that it was clearly established in 1972—almost thirty years before Plaintiff's conviction—that police cannot intentionally conceal exculpatory or impeachment evidence, pointing to Supreme Court decisions as early as 1935. *Haley*, 657 F.3d at 49-51 (citing *Mooney v. Holohan*, 294 U.S. 103 (1935)).

Defendants' qualified immunity argument is a nonstarter as to the malicious prosecution claim as well. Defendants argue qualified immunity based on whether the legal claim of malicious prosecution was available when Plaintiff was arrested and prosecuted. Dkt. No. 24, 12-13. But the Supreme Court categorically stated that the Fourth Amendment right not to be seized without probable cause existed at least as early as 1977. *Manuel*, 580 U.S. at 364-65. That right was, therefore, clearly established in 1999, when Plaintiff was wrongly arrested and then

wrongly prosecuted without probable cause.

As for Plaintiff's failure to intervene claims, the relevant inquiry focuses on whether the misconduct that was allowed to go undetected by Defendants was clearly established. As stated above, it was well established when Plaintiff was arrested and prosecuted that the fabrication of inculpatory evidence and the suppression of exculpatory evidence violated due process. Defendants Hayes and Gomes decided not to intervene to stop either. That alone supports a stand-alone suppression claim—failing to disclose fabricated evidence and/or suppressed exculpatory evidence is itself the suppression of that same evidence. Such evidence is the sort of impeachment evidence that is conclusively material, within the meaning of *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio*, 405 U.S. at 154-55. It could have been used to cross-examine Thompson and Hayes, who testified during criminal proceedings. *Smith*, 565 U.S. at 75; *Conley v. United States*, 415 F.3d 183, 189 (1st Cir. 2005) (holding that suppressed evidence that would have impeached the witness' "ability to recall" violated due process"); *Penate v. Kaczmarek,* No. CV 3:17-30119-KAR, 2018 WL 4654708, at *10-12 (D. Mass. Sept. 27, 2018).

It also constitutes a separate claim of failing to intervene to stop the misconduct, thereby leading to Plaintiff's injury.

## D.  PLAINTIFF PROPERLY PLEADS CLAIMS AGAINST DEFENDANT CITY OF BROCKTON

Plaintiff presents viable claims that Defendant COB is liable under §1983 for the violations of Plaintiff's rights that were caused by Brockton's express policies or omissions of policy, the actions of its final policymakers, its failure to train or supervise employees, or a widespread custom or practice. *Monell,* 436 U.S. at 690-91; *Haley v. City of Brockton*, 657 F.3d 39, 51-53 (1st Cir. 2011); *see also Glisson v. Indiana Dep't of Corr*., 849 F.3d 372, 379 (7th Cir.

2017) (*en banc*). Plaintiff properly pleads that the violations of his right to due process were caused by: (1) COB's failure to train and supervise its officers; and (2) COB's omission of needed policies governing disclosing and preserving evidence and interviewing victims and witnesses.

### 1. *Haley* Controls the Reading of Plaintiff's Policy Allegations.

Plaintiff properly alleges that the COB had policies and practices that allowed officers to withhold material exculpatory and/or impeachment evidence and plant and fabricate physical and other evidence while simultaneously failing to supervise and train its officers. Dkt. No. 1, at ¶¶91-98. As a result, BPD officers deliberately suppressed exculpatory evidence; falsified and fabricated statements, evidence and testimony of witnesses; failed to maintain or preserve evidence; and pursued wrongful convictions through profoundly flawed investigations. *Id*., ¶99. Plaintiff's allegations are sufficient, especially given that this case demonstrates the consequences of these customs. *See also Bordanaro v. McLeod*, 871 F.2d 1151, 1161 (1st Cir. 1989) (explaining that "the jury could have considered the incident itself" in determining the policies and practices of the police department).

Brockton's primary contention is that Plaintiff has not sufficiently pled his *Monell* claim. In making this argument, however, Brockton overlooks *Haley*—which is the authoritative treatment of *Monell* claims at this stage. The City ignores that Plaintiff's allegations here closely mirror those in *Haley*—which the First Circuit found sufficient. Like the allegations here, the plaintiff in *Haley* alleged that Boston police "had a standing policy that was itself unconstitutional and that the City failed to train its personnel in their evidence disclosure obligations despite notice of persistent and ongoing violations." *Haley*, 657 F.3d at 51. The First Circuit concluded that those allegations were "sufficient to anchor two separate *Monell*-type

claims, each demanding a different kind of proof." *Id*. Although the First Circuit expressly noted

that the plaintiff would need to develop evidence in discovery to support those claims, it held

that the allegations themselves were sufficiently pled for the plaintiff to proceed. *Id*.; *see also*

*Echavarria v. Roach*, No. 16-cv-11118-ADB, 2017 WL 3928270, at *5 (D. Mass. Sept. 7, 2017)

(relying on *Haley* to find analogous *Monell* allegations "sufficient to survive a motion to

dismiss"). The same result should obtain here.

### 2. Plaintiff Properly Pleads *Monell*-Liability Against Defendant COB That It Failed to Supervise And Train Its Police Officers.

Plaintiff claims in his Complaint that Defendant COB failed to sufficiently supervise and

train its police officers. This is a properly pled stand-alone *Monell* theory. Brockton is liable for

failing to train and supervise its officers if it knew or should have known that its supervision

and/or training was inadequate but exhibited deliberate indifference to the effects of those

inadequacies by failing to implement supervision or training. *Young v. Providence*, 404 F.3d 4,

25-29 (1st Cir. 2005); *see also Haley*, 657 F.3d at 52. Municipal liability attaches under this

theory without a pattern of similar constitutional violations, so long as it was obvious that a

failure to supervise or train on a subject was likely to lead to the violation of constitutional rights.

*City of Canton v. Harris*, 489 U.S. at 378, 390 (1989); *Young*, 404 F.3d at 28-29. As the First

Circuit concluded in *Young*, a viable supervision or training *Monell* claim exists if there was a

training or supervision deficiency in a particular area, and the constitutional injury inflicted by an

untrained officer was closely related to that deficiency. 404 F.3d at 26-28.

To start, the Supreme Court has held that prior instances of misconduct are not always

required for a failure to train claim. *See Bd of County Commissioners of Bryan County v. Brown*,

520 U.S. 397, 409 (1997); *Canton*, 489 U.S. at 390 n.10. In *Connick v. Thompson*, 563 U.S. 51

(2011), the Supreme Court contemplated one of the very situations presented here: failure to

22

train officers regarding their *Brady* obligations. In *Connick*, the Court found no single-incident liability for failure to train *prosecutors* about *Brady* because prosecutors are legally trained and familiar with *Brady*. *Connick*, 563 U.S. at 63-71. The Court expressly distinguished attorneys from police officers: "The reason why the *Canton* hypothetical is inapplicable is that attorneys, *unlike police officers*, are equipped with the tools to find, interpret, and apply legal principles." *Id.* at 69-70 (emphasis added); *id*. at 63 (explaining that legal training is what differentiates attorneys from other public employees).

For that reason, courts have repeatedly held that plaintiffs can even survive summary judgment, let alone at the pleading stage, on a single-incident failure to train *Monell* claim regarding *Brady* because the failure to train officers about their *Brady* obligations has the "highly predictable consequence" that a plaintiff's due process rights will be violated. *See Echavarria v. Roach*, 565 F.Supp.3d 51, 91 (D. Mass. 2021) ("a reasonable jury could find that failing to train officers on their obligations to disclose exculpatory evidence leads to the highly predictable consequence that officers will not disclose exculpatory evidence"). In *Echavarria*, relying on *Connick*, 563 U.S. at 64, the Court allowed a *Monell* claim to proceed to trial under a failure to train/supervise theory related to the obligation to disclose exculpatory evidence. It found that, even in the absence of a pattern of prior misconduct, "a reasonable jury could find that failing to train officers on their obligations to disclose exculpatory evidence leads to the highly predictable consequence that officers will not disclose exculpatory evidence." *Id.* The Court noted that police officers are not trained in the law, and it is obvious that they require training to comply with disclosure requirements. *Id*.; *see also Vineyard v. County of Murray*, 990 F.2d 1207, 1212 (11th Cir. 1993) (*per curiam*); *Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) ("At a minimum, Plaintiff has presented sufficient evidence to survive summary judgment on his

failure to train allegations regarding exculpatory materials . . . This Court has held that evidence
pointing to a City's failure to provide *any* training on key duties with direct impact on the
constitutional rights of citizens is sufficient to survive summary judgment with a *Monell* failure
to train claim.").

Other courts in this Circuit accordingly recognize the viability of deliberate indifference
claims without showing a prior pattern of constitutional violations based on the obvious need for
training/supervision. *See Young*, 404 F.3d at 28 ("We have stated that '[t]he Supreme Court has
left open the possibility that a failure-to-train claim can succeed without showing a pattern of
previous constitutional violations.'") (quoting *Swain v. Spinney*, 117 F.3d 1, 11 (1st Cir. 1997)
(citing *Brown*, 520 U.S. at 409); *see also Monteiro*, 2023 WL 6314658, at *9 ("In an era when
DNA testing is an established tool of law enforcement investigations, and the PPD had been
using DNA evidence since 2005, a jury could find that total failure [to train] grossly negligent.").

Here, Plaintiff sufficiently alleges that the constitutional violations resulting from not
supervising/training investigators about their obligation to disclose exculpatory evidence was
such an obvious consequence that it required that BPD provide those safeguards. Plaintiff's
allegations, therefore, properly assert that COB's failure to train and/or supervise caused the
constitutional violations inflicted by Defendants. As Plaintiff alleges, it was readily apparent to
Brockton that its failure to train and/or supervise police officers in areas like disclosure of
evidence, preservation of evidence, documenting witness interviews, and the abuse of evidence
from "informants" would cause constitutional injuries in criminal investigations and prosecutions
like the ones that Plaintiff suffered.

Given Plaintiff's allegations and the long-established cases calling for police supervision
and training on the core issues on which Brockton provided no training and/or supervision (as

demonstrated by, among other things, its decision to ignore the misconduct of its investigators here), Plaintiff sufficiently alleges Defendant COB's deliberate indifference to the need to supervise and/or train its officers and that this indifference caused Plaintiff's injuries. *See Young*, 404 F.3d at 28-29.

Notwithstanding this law, Defendant COB sets up a straw-man argument related to Plaintiff's alleged failure to plead evidence of a pattern of similar misconduct. Dkt. No. 24, at 17. Defendant does this although Plaintiff has other paths besides proving such a pattern to proceed with his *Monell* claim. *Id*., at 7-8. In fact, Plaintiff need only allege that the COB disregarded a known or obvious risk of serious harm in failing to supervise or train. *See Young*, 404 F.3d at 28.

Defendant COB is wrong that Plaintiff needs to plead allegations beyond those deemed acceptable in *Haley*. Even at the summary judgment stage, Plaintiff need only show some evidence of common knowledge within the BPD that it needed to supervise and/or train its employees for the case to proceed to trial on that issue. *Id*., at 28-29. Plaintiff presents more than enough even to allege a common knowledge within the BPD and acquiescence to investigative misconduct. Dkt. No. 1, ¶¶91-99. Brockton's claim that Plaintiff needs to plead facts well beyond that at this stage is a nonstarter.

Plaintiff also pleads more than enough to allege that no action was taken to rectify their misconduct, and that these officers were allowed to conduct investigations (including the one involved here) without any supervision or training intervention. Dkt. No. 1, ¶95. These allegations would be enough to get Plaintiff a trial on these subjects, *see Young*, 404 F.3d at 28-29—and they are more than enough at the pleading stage.

Plaintiff adequately pleads that the COB failed to supervise and/or train its officers so that it could be found liable under *Monell*. Plaintiff's allegations are akin to those identified in

*Bordanaro*, which led the First Circuit to proclaim that "the jury was well within its discretion in finding that the recruitment, training, supervision, or discipline of [the defendant's] police officers was grossly and flagrantly deficient." 871 F.2d at 1159-61. Plaintiff's failure to train and supervise *Monell* claims should be allowed to proceed.

3. **Plaintiff Properly Alleges a *Monell* Claim that Brockton Omitted Needed Policies Causing The Violation Of Plaintiff's Constitutional Rights.**

a. **Established law holds that Brockton may be liable under *Monell* for its failure to adopt needed policies.**

Municipalities may be liable under 42 U.S.C. §1983 when they promulgate policies that are facially deficient in the face of actual or constructive notice that their programs present an obvious risk of harm. A decision not to adopt a needed policy gives rise to *Monell* liability because a "city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick*, 563 U.S. at 61-62 (quoting *Canton*, 489 U.S. at 395 (O'Connor, J., concurring and dissenting in part)).

"The critical question under *Monell*, reaffirmed in *Los Angeles County v. Humphries*, 526 U.S. 29 (2010), is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson*, 849 F.3d at 379. Applying this principle, the courts of appeals uniformly have decided that "in situations that call for procedures, rules or regulations, the failure to make policy itself may be actionable." *Glisson*, 849 F.3d at 381; *see also Fields v. City of Chicago*, 981 F.3d 534, 562-63 (7th Cir. 2020) (affirming verdict finding municipality labile for failing to promulgate needed policies requiring police to disclose evidence in the 1980s).

The First Circuit approved an omission-in-policy *Monell* theory at the motion-to dismiss

stage in *Haley*, 657 F.3d at 51-53. Haley had been wrongly convicted in the early 1970s and served decades in prison before being exonerated when public records requests revealed that police had suppressed exculpatory statements from two key witnesses who had implicated Haley. *Id*. at 43-45. Haley sued the officers who investigated the case and the municipality, and he alleged, among other things, that the standing policy of the municipality allowed officers not to disclose evidence in criminal cases. *Id*. at 51-52. In his complaint, Haley contrasted the deficient evidence-disclosure policy "with that of the district attorney's office, which . . . had a standing policy to disclose all known exculpatory and impeachment evidence. . ." *Id*. at 52.

The First Circuit held that those allegations plausibly stated a *Monell* claim that "implicates the standing policy itself" and thus might render the municipality liable on a theory "that a particular municipal action itself violates federal law[.]" *Id*. at 51-52. Brockton's municipal action was a failure to promulgate evidence-disclosure policies that the city knew in the early 1970s were needed to avoid the due process violations that Haley had suffered. In that case, the municipality "vigorously dispute[d] the accuracy of these allegations," but First Circuit held it was "neither the time nor the place to resolve the factual disputes between the parties." *Id*. at 52.

Applying this law, Plaintiff must allege that Brockton caused the due process violations that Plaintiff suffered by failing to adopt policies that the COB knew it needed. Plaintiff's Complaint meets this requirement. As stated above, the COB had a custom that allowed its investigators to conduct unconstitutional investigations with impunity. This demonstrates the lack of policy requiring the full disclosure of exculpatory evidence, prohibitions against fabricating evidence, and clear requirements to report misconduct. Indeed, Plaintiff alleges the absence of sufficient policies that led to the situation that caused Plaintiff's wrongful arrest and

prosecution. Dkt. No. 1, at ¶¶91-98.

Plaintiff further alleges in his Complaint that Brockton had ample notice it needed to promulgate policies governing police conduct in these areas but did not. This investigation began in 1999, so this is not an ancient case where there might be some reasonable question about whether national standards for police practice had been established. The Court in *Haley* recognized that the BPD's lack of evidence disclosure policies in the 1970s was actionable. 657 F.3d at 51-53; *see also Fields*, 981 F.3d at 562-63 (same in the 1980s).

Plaintiff also properly alleges in his Complaint that Brockton's omitted policies caused the violations of his rights. That they did so here is a natural cause of BPD's failure to institute those needed guidelines about evidence disclosure, documentation, and preservation of evidence.

Moreover, causation is a classic jury question. *Union Insurance Co.*, 124 U.S. at 423. Deciding that allegation at this stage is premature. There are ample allegations in the Complaint to support the claim that the violations of Plaintiff's were caused by Brockton's omission of needed policies requiring its police officers to disclose and preserve evidence.

The First Circuit recognized in *Haley* that municipal policies in the 1970s omitting needed procedures governing police disclosure of evidence stated a *Monell* claim. Plaintiff's Complaint presents *Monell* theories that are identical and analogous. As in *Haley*, Plaintiff's Complaint sufficiently states a claim against Defendant COB under *Monell*.

### E.  PLAINTIFF'S STATE LAW CLAIMS ARE VIABLE

### 1. Plaintiff Sufficiently Pleads Claims of State Law Malicious Prosecution Against Defendants Hayes and Gomes.

As with his federal malicious prosecution/arrest and prosecution without probable cause claim, Plaintiff's claim under Massachusetts law for malicious prosecution is viable. Defendants make the same probable cause claims asking the Court to find probable cause based on

28

fabricated evidence. As above, probable cause is a jury question and cannot rest on false evidence. Plaintiff's state law malicious process claims are viable. Plaintiff's Complaint, which must be accepted as true, outlines the ways that Defendants framed Plaintiff in that proceeding and rendered the legal proceedings against him unfair in violation of his Fourteenth Amendment rights. *See Williams v. City of Boston*, 771 F. Supp. 2d 190, 206-07 (D. Mass. 2011).

Under Massachusetts law, to prove malicious prosecution, Plaintiff must establish that "(1) [he was] damaged because the defendants commenced the criminal prosecution without probable cause; (2) that they did so with malice or improper purpose, and (3) that the criminal action terminated in [his] favor." *Id*. at 206 (quoting *Afreedi v. Bennett*, 517 F. Supp. 2d 521, 540 (D.Mass. 2007)). Like here, in *Williams*, the defendants argued that the plaintiff failed to plead sufficient facts to state a claim for malicious prosecution. The court disagreed, noting that the complaint there sufficiently alleged that the conviction was obtained by the defendants' false testimony and as a result of a conspiracy between the defendants to deprive him of his constitutional rights. *Id*.

Defendants' argument that the Complaint lacks an allegation of improper motive (Dkt. No. 24, at 20) also fails. As the court in *Williams* concluded, "Proof of improper motive requires proof that [the defendant] acted primarily for a purpose other than that of properly carrying out his duties, or was attempting to achieve an unlawful end or a lawful end through unlawful means, or intended to harass, vex, or annoy the Plaintiff [ ]." *Id*. (quoting *Afreedi*, 517 F. Supp. 2d at 540). The court reasonably inferred the officers were acting for an improper motive based on the plaintiff's claim that the officers initiated criminal proceedings against him without any evidence that he had committed a crime. *Id.* In other words, malice "may be inferred from a lack of probable cause." *Miller v. Pugliese*, 693 F. Supp. 3d 163, 182 (D. Mass. 2023) (citing *Campbell*

*v. Casey*, 166 F. Supp. 3d 144, 153 (D. Mass. 2016)). Those same conclusions are warranted here.

2. **Plaintiff Sufficiently Pleads Claims of Intentional Infliction of Emotional Distress Against Defendants Hayes and Gomes.**

Plaintiff's intentional infliction of emotional distress claims against Defendants Hayes and Gomes are actionable under Massachusetts law. To sustain a claim of intentional infliction of emotional distress ("IED") under Massachusetts law, a plaintiff must show: (1) that a defendant "intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Bazinet v. Thorpe*, 2016 WL 3149657 at *7 (D. Mass. June 3, 2016) (citing *Polay v. McMahon*, 468 Mass. 379, 10 N.E.3d 1122, 1128 (2014)). *See also Barbosa v. Conlon*, 962 F. Supp. 2d 316, 333 (D.Mass. 2013).

To be considered extreme and outrageous, the defendant's conduct must go "beyond all possible bounds of decency, and [be] regarded as atrocious, and utterly intolerable in a civilized community." *Bazinet*, 2016 WL 3149657 at *7 (quoting *Polay*). "Police officers fabricating evidence in an effort to obtain criminal charges against an innocent citizen . . .would be sufficient to meet the high standard for a claim of IIED." *Id.* (citing *Limone v. United States*, 497 F. Supp. 2d 143, 227 (D.Mass.2007) (finding that framing of innocent men by law enforcement officials was extreme and outrageous conduct for purposes of intentional infliction of emotional distress)).

Since Plaintiff here asserts the same claims against Defendants that the courts in *Bazinet* and *Limone* found to be sufficient to bring an intentional infliction of emotional distress, there is no basis for a motion to dismiss these claims.

3. **Plaintiff Sufficiently Pleads Claims of State Law Conspiracy Against Defendants Hayes and Gomes.**

In a footnote (Dkt. No. 24, at 16, n.4), Defendants claim insufficient pleadings for state law conspiracy. Defendants rely on their arguments relating to Plaintiff's federal conspiracy claims. For the same reasons stated above, *see infra* at 17-18, Plaintiff sufficiently pleads state law conspiracy so as to put Defendants on notice of these claims.

4. **Dismissal of Plaintiff's Negligence Claims Against Defendants Hayes and Gomes Is Premature.**

Plaintiff agrees that his negligence claims against Defendants fall under the Massachusetts Tort Claims Act (MTCA). Mass. Gen. Laws ch. 258, § 1, *et seq*. The MTCA creates a mechanism for municipal liability when municipal employees are negligent and cause damages. *Id*. The MTCA makes the municipality liable for the acts of its employees (Section 2) and requires a claimant to present his claims to the municipality within two years of when the claim is known. *Id*. at § 4. Defendants ask for Plaintiff's negligence claims to be dismissed under the MTCA. 1. Dkt. No. 24, 21-22. Plaintiff asks the Court to find that dismissal at this stage is premature.

Plaintiff concedes that the MTCA framework typically substitutes a government entity as the individual defendant based on claims of its employees acting in the scope of employment. Plaintiff further agrees that his claims against the individual Defendants stem from their actions taken by them in the scope of their employment. Under the MTCA, therefore, the COB could be the sole liable party:

> [p]ublic employers shall be liable for injury . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances. . . .

Mass. Gen. Laws ch. 258, § 2. Thus, Brockton "could be liable under [the MTCA] for the

negligence of defendant officers acting within the scope of their duty." *Williams*, 771 F. Supp. 3d at 199 (quoting *Lewis v. Kendrick*, 944 F.2d 949, 953 (1st Cir. 1991).

But the MTCA does not automatically foreclose actions against individual government employees. Rather, it requires government employees to cooperate in any defense. If they do not, then they may be liable individually:

> a public employee shall provide reasonable cooperation to the public employer in the defense of any action brought under this chapter. Failure to provide such reasonable cooperation on the part of a public employee shall cause the public employee to be jointly liable with the public employer, to the extent that the failure to provide reasonable cooperation prejudiced the defense of the action.

Mass. Gen. Laws ch. 258, § 2.

Defendants have not stated to what extent the individual Defendants will reasonably cooperate with the City of Brockton. Until it is clear that the individual Defendants have reasonably cooperated with the public employer, it would be premature to dismiss Plaintiff's claims against the individual Defendants under the MTCA.

### 5. Plaintiff's State Law Negligence Claims Against the City of Brockton are Viable

The City of Brockton is correct that Plaintiff must present his state law negligence claims within two years of those claims becoming known to him. Plaintiff's negligence claims accrued when he "discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm." Magliacane v. City of Gardner, 483 Mass. 842, 851 (2020) (quoting *Harrington v. Costello*, 467 Mass. 720, 727, 7 N.E.3d 449 (2014).

Here, Plaintiff's awareness that he suffered harm from Defendants' negligence in the form of a wrongful arrest and prosecution (Dkt. No. 1, ¶142) occurred only when the Commonwealth terminated that wrongful prosecution in January 2023. Dkt. No. 1, ¶ 136. Before then, Plaintiff did not have a cause of action that Defendants' negligence led to his improper

arrest and prosecution because the prosecution was still ongoing. To conclude otherwise would require any person who is being prosecuted or convicted to present claims of negligence during the pendency of the prosecution and/or sentence. Put another way, it would allow people to bring civil claims for negligence related to ongoing prosecutions and existing convictions—opening the floodgates for prison civil litigation, exactly what the MTCA intended. Plaintiff presented his claims to Defendant City of Brockton within two years from when the wrongful prosecution ended. *See* Ex. 1 (Presentment Letter). This presentment was timely.

Moreover, the substance of Plaintiff's negligence claims are sufficient. Defendants' cursory argument to the contrary amounts to a waiver. *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (perfunctory arguments are deemed waived).

### 6. Plaintiff Sufficiently Pleads Claims Under the Massachusetts Civil Rights Act Against Defendants Hayes.

Plaintiff sufficiently pleads claims against Defendant Hayes under the Massachusetts Civil Rights Act ("MCRA"). Defendants move to dismiss this claim, alleging Plaintiff did not sufficiently plead the elements. Dkt. No. 24, 22-23. They have misread Plaintiff's Complaint.

The MCRA "provides a cause of action against a person who has 'interfere[d] by threats, intimidation or coercion' with the exercise of rights secured by the state or federal constitutions or laws." *Bazinet*, 2016 WL 3149657 at *6 (quoting Mass. Gen. Laws ch. 12, §§ 1 lH, 111). In order to establish a claim under the MCRA, a plaintiff "must prove that (1) [his or her] exercise [or] enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." *Id*. (citing *Roman v. Trustees of Tufts Coll.*, 461 Mass. 707, 964 N.E.2d 331, 337 (2012)). To be actionable, a defendant's actions must amount to "an attempt to force someone to do something the person is

not lawfully required to do." *Id*. (citing *Freeman v. Planning Bd. of W Boylston*, 419 Mass. 548,

646 N.E.2d 139, 149 (1995)).

For purposes of the MCRA, a "threat" is "the intentional exertion of pressure to make

another fearful or apprehensive of injury or harm." *Id*. (quoting *Planned Parenthood League of

Massachusetts, Inc. v. Blake*, 417 Mass. 467, 631 N.E.2d 985, 990 (1994)). "Intimidation"

involves putting a person "in fear for the purpose of compelling or deterring conduct." *Id*.

"Coercion" means "the application to another of such force, either physical or moral, as to

constrain [her] to do against [her] will something [she] would not otherwise have done." *Id*.

Plaintiff's MCRA claim here sufficiently pleads these elements as to Defendant Hayes'

interactions with the girl and the "jailhouse informant." Moreover, the facts of the Complaint,

read with all reasonable inferences in favor of Plaintiff, fully support that his claims encompass

Defendants' attempts to force the witnesses against Plaintiff to give false testimony and that they

used intimidation and coercion to do so. "Threatening, intimidating, or coercive actions directed

at third parties should be included in considering any conduct that forms the basis of a claim

under the civil rights act." *Id*. (citing *Haufler v. Zotos*, 446 Mass. 489, 845 N.E.2d 322, 334

(2006)). Plaintiff's claims against Defendant Hayes under the MCRA are viable.

## CONCLUSION

Defendants present no lawful basis to dismiss any of Plaintiff's claims against the

Brockton Defendants as pled. Plaintiff's federal and state law claims against Defendants Hayes

and/or Gomes meet the pleading standards needed to proceed to discovery. At this stage, Plaintiff

is not tasked with proving his claims (as many of Defendants' arguments claim). Plaintiff's

allegations sufficiently give notice of the basis of his claims. Nor is any Defendant entitled to

shield misconduct through qualified immunity. Plaintiff's allegations lay out misconduct that

would have been known to be unlawful when the actions were taken. Finally, Plaintiff states viable policy claims against Defendants City of Brockton. Dismissal of these claims is not warranted under the Rules. Plaintiff's claims against each Defendant as outlined above should be allowed to proceed to discovery.

WHEREFORE, Plaintiff asks that Brockton Defendants' motion to dismiss be denied. Should the Court believe that this motion has any merit, Plaintiff asks for leave to file an Amended Complaint under Federal Rule of Civil Procedure 15(a)(2) ("The court should freely give leave when justice so requires"), to address any deficiencies in his allegations against either party.

February 26, 2025

RESPECTFULLY SUBMITTED,

CLIFTON CALDWELL

By:     /s/ Mark Loevy-Reyes
        *One of Plaintiff's Attorneys*

        Mark Loevy-Reyes, BBO No. 707974
        LOEVY + LOEVY
        398 Columbus Avenue, #294
        Boston, MA 02116
        P: (312) 243-5900
        F: (312) 243-5902
        mark@loevy.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Mark Loevy-Reyes, an attorney, hereby certify that on February 26, 2025, I filed the

foregoing **PLAINTIFF'S RESPONSE TO THE BROCKTON DEFENDANTS' MOTION**

**TO DISMISS** using the Court's CM/ECF system, which effected service on all counsel of

record.

/s/ Mark Loevy-Reyes
*One of Plaintiff's Attorneys*